[Cite as *State v. Mootispaw*, 2014-Ohio-5316.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


STATE OF OHIO,                              :

    Plaintiff-Appellee,                   :                CASE NO.   CA2014-04-006

                                                   :                O P I N I O N
    - vs -                                                                 12/1/2014

                                                   :

RUSTY EUGENE MOOTISPAW,                     :

    Defendant-Appellant.               :


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 81 CRI 0087


Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Rusty Eugene Mootispaw, #A164741, Chillicothe Correctional Institution, P.O. Box 5500, Chillicothe, Ohio 45601, defendant-appellant, pro se


**PIPER, J.**

{¶ 1}   Defendant-appellant, Rusty Mootispaw, appeals a decision of the Fayette County Court of Common Pleas, denying his motion for postconviction relief.

{¶ 2}   In 1981, Mootispaw murdered an 85-year-old woman, Lillian McCarty, after breaking into her home.  Mootispaw was indicted for aggravated burglary, complicity to aggravated burglary, and aggravated murder.  Mootispaw pled guilty to an amended

indictment charging a single count of murder, and was sentenced to 15 years to life in prison.

{¶ 3} Since the time of his plea and sentence, Mootispaw has moved the trial court multiple times to withdraw his guilty plea and for postconviction relief. Each time the trial court denies Mootispaw's motions, Mootispaw appeals the trial court's decision and this court has affirmed. *See, e.g., State v. Mootispaw*, 12th Dist. Fayette No. CA2004-02-007, 2005-Ohio-2372; *State v. Mootispaw*, 12th Dist. Fayette No. CA2002-01-003 (Oct.25, 2002) (entry dismissing appeal); *State v. Mootispaw*, 12th Dist. Fayette No. CA2000-06-017 (Apr. 2, 2001); *State v. Mootispaw*, 12th Dist. Fayette No. CA99-01-001 (Aug. 23, 1999); *State v. Mootispaw*, 12th Dist. Fayette No. CA95-03-008 (Nov. 27, 1995); and *State v. Mootispaw*, 12th Dist. Fayette No. CA85-09-012 (Mar. 10, 1986).

{¶ 4} Most recently, Mootispaw filed another petition for postconviction relief, asking the trial court to withdraw his guilty plea, alleging it was coerced. Mootispaw argued that he had newly-discovered evidence in the form of an affidavit from former prosecutor James Kiger, who had prosecuted Mootispaw's case. The affidavit, filed in support of Kiger's motion to dismiss a civil case filed by Mootispaw, stated that Kiger was the prosecutor at the time Mootispaw was indicted for murder and that Mootispaw pled guilty "in lieu of facing a jury and imposition of the death penalty." Mootispaw argued that the affidavit was newly-discovered evidence establishing the state threatened him with the death penalty if he would not plead to the murder charge despite Ohio not having a death penalty at the time of his conviction and sentence.[1]

{¶ 5} The trial court denied Mootispaw's petition in a judgment entry without making findings of fact or conclusions of law. Mootispaw now appeals the trial court's decision,

---

1. Ohio's death penalty statute was temporarily repealed in 1978 and was not active again until October 19, 1981. Therefore, at the time of Mootispaw's crime/sentence, he was not subject to the death penalty.

raising the following assignments of error. For ease of discussion, and because the issues are interrelated, we will address Mootispaw's assignments of error together.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ABUSED ITS DISCRETION BY DISMISSING SUCCESSIVE POSTCONVICTION PETITION SUPPORTED WITH NEW EVIDENCE CONCEALED BY THE PROSECUTION.

{¶ 8} Assignment of Error No. 2:

{¶ 9} INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 10} Assignment of Error No. 3:

{¶ 11} BECAUSE DEFENSE COUNSEL AND THE PROSECUTION WERE IN COLLUSION TO CONVICT DEFENDANT, THE PLEA WAS UNKNOWING AND INVOLUNTARY.

{¶ 12} Mootispaw argues in his assignments of error that the trial court should have granted his motion for postconviction relief because there is new evidence in his case that his trial counsel was ineffective for allowing the state to threaten him with the death penalty.[2]

{¶ 13} According to R.C. 2953.23, Ohio's statute on successive petitions for postconviction relief,

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:
>
> (1) Both of the following apply:

---

2. Mootispaw also challenges the fact that the trial court did not issue findings of fact or conclusions of law when dismissing his petition for postconviction relief. However, Ohio law is well-settled that a trial court does not have to issue findings and conclusions when denying a successive petition for postconviction relief. *State v. Bailey*, 12th Dist. Butler No. CA2003-03-066, 2003-Ohio-5989.

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.[3]

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted * * *.

{¶ 14} Despite Mootispaw's arguments, we do not find that there is any newly-discovered evidence or that Mootispaw was unavoidably prevented from discovering facts upon which he must rely to present the claim for relief. After a thorough review of the record, we cannot find that any evidence contained in the affidavit filed by former prosecutor Kiger is newly-discovered evidence or necessary facts to form the basis for a claim where the record does not indicate that Mootispaw was told he would face the death penalty if he did not plead.

{¶ 15} During the trial court's colloquy with Mootispaw at the plea hearing, the trial court specifically and expressly told Mootispaw that "Aggravated Murder has a penalty of life in prisonment [sic] and of course it is not probational." At no time was Mootispaw told by the trial court that he would face the death penalty if he did not plead to a reduced charge. As such, Mootispaw did not proceed through the process of changing his plea to guilty with a belief that he faced the death penalty as a possible punishment for aggravated murder.

---

3. According to R.C. 2953.21(A)(2), a petitioner has 180 days after a trial transcript is filed with the appellate court in a direct appeal or the time for a direct appeal has passed to file a petition for postconviction relief. The record indicates that Mootispaw's latest successive petition for postconviction relief was filed approximately 32 years after the 180-day time frame ended so that his petition was untimely filed unless newly-discovered evidence was presented. We will soon discuss why Mootispaw was not unavoidably prevented from discovery of the facts upon which he must rely to present the claim for relief. For those same reasons, we find that the affidavit did not present newly-discovered evidence as such is contemplated by R.C. 2953.21(A)(2).

- 4 -

{¶ 16} Moreover, and specific to R.C. 2953.23(A)(1)(b), there is no indication in the record that Mootispaw would not have decided to plead guilty, even without mention of the death penalty. Instead, the state agreed to dismiss two charges related to aggravated burglary and further reduced the murder charge from aggravated murder to murder. Even without considering the imposition of the death penalty, the state's offer to dismiss two charges and amend the aggravated murder charge to murder allowed Mootispaw to face a lesser sentence than what he would have faced had he been convicted of the two burglary charges and aggravated murder.

{¶ 17} The record contains the trial court's judgment entry, in which the court noted that part of the plea negotiation included the state's offer to amend the indictment from three charges of aggravated burglary, complicity to aggravated burglary, and aggravated murder to a single charge of murder in return for Mootispaw agreeing to plead guilty. The record also contains the transcript of the plea hearing wherein the parties discussed the negotiations. The state confirmed that the trial court correctly summarized the negotiations as the state's offer to amend the indictment to dismiss the burglary charges and lower the aggravated murder charge to murder. However, no mention was made that the negotiation process included a discussion of the death penalty. The record does not indicate that any part of the plea agreement included removal of the death penalty as a possible punishment, or that any mention was made of the death penalty during the negotiations.[4]

{¶ 18} Former prosecutor Kiger's mention of the death penalty in his affidavit for the civil case does not change the fact that the record in Mootispaw's criminal case contains no reference to the death penalty or that such a discussion played any part in the plea

---

4. No mention was made of the death penalty because the trial court correctly informed Mootispaw that aggravated murder, at that time, was punishable by a sentence of life; whereas Mootispaw subsequently pled to murder, which was punishable by a sentence of 15 years to life.

negotiations. The affidavit, offered as part of a civil cause filed 32 years after the criminal proceedings occurred, was meant to explain why former prosecutor Kiger should be dismissed from yet another civil case filed against him by Mootispaw. The affidavit introduced Kiger as the prosecutor responsible for Mootispaw's case, and briefly mentioned the fact that Mootispaw chose to plead guilty to the murder charge. The fact that former prosecutor Kiger mistakenly made reference to the death penalty does not, however, constitute newly-discovered evidence or necessary facts to establish a claim for relief where such a statement was not an official account as to what occurred during plea negotiations with Mootispaw. Therefore, the affidavit offered in the civil case does not have a bearing on Mootispaw's criminal case where the record clearly demonstrates that discussion of the death penalty was never a negotiation tactic used by the state. *See State v. Garcia*, 12th Dist. Butler No. CA2013-02-025, 2013-Ohio-3677 (finding interrogatories in civil case did not constitute newly-discovered evidence to warrant consideration of an untimely petition for postconviction relief).

{¶ 19} In light of the foregoing, the trial court could not entertain Mootispaw's untimely successive petition for postconviction relief. Mootispaw's assignments of error are, therefore, overruled.

{¶ 20} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.